**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 07a0745n.06**
**Filed: October 18, 2007**

**No. 06-2377**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| THERESITA DIETRICH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RICHARD K. STEPHENS, individually and | ) | EASTERN DISTRICT OF MICHIGAN |
| as an incorporator of 718 NOTRE DAME | ) | |
| MTG, LLC, and 718 NOTRE DAME MTG, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: NORRIS, GIBBONS, and ROGERS, Circuit Judges.

**ROGERS**, **Circuit Judge**. Although a prior state court suit for breach of obligations under a promissory note had been settled, the same plaintiff later brought this suit in federal court for failure to pay amounts that did not come due until after the settlement agreement. The district court concluded that the doctrine of *res judicata* precluded plaintiff from litigating the claims in federal court. Because the claims raised by plaintiff in federal court are not the same, and do not arise from the same transaction, as the claims previously litigated in state court, we reverse and remand for further proceedings.

                                                                 **I.**

Plaintiff Theresita Dietrich is the successor-in-interest to the Dietrich Family Irrevocable Trust ("Trust"). On May 4, 2004, the Trust agreed to sell commercial property located at 718 Notre Dame Avenue in Grosse Pointe, Michigan, to Richard K. Stephens. To facilitate the sale, the Trust, on June 4, 2004, executed a promissory note with 718 Notre Dame MTG, LLC ("MTG"), an entity incorporated by Stephens.[1] By the terms of the note, MTG agreed to pay the Trust a series of twelve consecutive interest-only monthly payments, with the balance of the note ($265,000) coming due thirty days after tender of the last interest payment.[2] Although MTG incurred liability on the note,[3] a separate entity also incorporated by Stephens, 718 Notre Dame, LLC ("LLC"), obtained title to the property. Stephens is the sole member of both MTG and LLC.

---

[1]Prior to execution of the note of June 4, 2004, Stephens and the Trust executed a note on May 4, 2004. This note was allegedly destroyed and replaced by the note of June 4, 2004 when Stephens encountered problems related to securing a second lien on the property. Although Dietrich originally asserted claims under both notes in her Complaint and in her Brief in Opposition to Defendant's Counter-Motion for Summary Judgment, in her brief she refers only to the note of June 4, 2004. We therefore do not address any previous claims that might have been raised under the note of May 4, 2004.

[2]According to Stephens' deposition, the property closed on July 26, 2004. Thus, by the terms of the note, the first interest-only monthly payment was due on August 25, 2004, to be followed by eleven more interest-only monthly payments, with the balance coming due in August 2005. Dietrich filed the state action prior to November 2004, before the balance was due.

[3]That MTG is obligated under the note and settlement agreement is not contested. We do not address here whether Stephens may be personally liable under the note and settlement agreement.

After a dispute arose as to MTG's payment obligations under the note, the Trust brought suit in Wayne County Circuit Court. The Wayne County court dismissed that action with prejudice pursuant to a settlement agreement signed in November 2004, and entered an order of dismissal on February 18, 2005.[4] Under the settlement agreement, MTG agreed to "bring current" payments that were past due under the note and to continue making payments pursuant to the terms of the note. On May 27, 2005, Dietrich filed the instant action against MTG and Stephens in the United States District Court for the Eastern District of Michigan, again asserting claims related to default on payments under the note. Dietrich asserted that "defendants have refused to make any payments since January 2005 despite repeated requests." On September 20, 2005, MTG and Stephens filed a Cross-Motion for Summary Judgment, asserting that Dietrich's federal suit seeks to litigate claims already litigated in the state court action. On October 10, 2006, the district court granted this motion, concluding that the doctrine of *res judicata* bars Dietrich's claims.

## II.

Contrary to the conclusion of the district court, *res judicata* does not bar Dietrich's claims. Although it is true that the facts that gave rise to the Trust's state court action originated in the same promissory note that Dietrich now seeks to enforce in federal court, Dietrich's federal court claims

---

[4]The district court did not have a signed settlement agreement before it at the time of its decision. However, an unsigned copy was submitted as Exhibit C of Defendant's Cross-Motion for Summary Judgment. In her Brief in Opposition to Defendant's Counter Motion for Summary Judgment, Dietrich originally denied settlement of the state action. However, she concedes settlement in her appellate brief.

arise from a set of facts that were not yet in existence at the time of the state court settlement—namely, MTG's post-settlement defaults. In the state action, the Trust had the opportunity to obtain a remedy for defaulted payments that had accrued up until the time the case settled in November 2004. The terms of the note did not allow for acceleration[5] and, pursuant to the settlement agreement, MTG's payment obligations under the note continued in effect. Dietrich's federal complaint alleges a breach of these continuing payment obligations—obligations that arose after settlement.

The doctrine of *res judicata* (also known as "claim preclusion")[6] refers to the preclusive effect of a prior judgment upon a subsequent proceeding. In cases where a prior judgment was rendered in state court, federal courts are obligated to give the same preclusive effect to the state court judgment as that judgment would receive in the rendering state. 28 U.S.C. § 1738 (2000). This court thus applies the law of the rendering state to determine the *res judicata* effect of a prior

---

[5]MTG and Stephens argue in their brief that Dietrich's assertion that the note does not contain an acceleration clause is contradicted by the following statement in her Complaint: "Plaintiff has accelerated the promissory note because of failure of payment." Dietrich also stated in her Complaint that "because Defendants are in default, Plaintiff is entitled to a Judgment accelerating the amounts due under the notes." Despite Dietrich's use of this language, the note does not contain a clause allowing the Trust to recover the full balance of the note upon default. Rather, the note grants the Trust the right to keep all payments made to date and to take possession of the collateral backing the note.

[6]The term "*res judicata*" is often used to refer to both issue preclusion and claim preclusion. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). We use the term here to refer only to claim preclusion.

state court judgment. *Migra*, 465 U.S. at 81; *see also Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

Under Michigan law, *res judicata* "bars a second, subsequent action" only if "the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). This requirement reflects a transactional approach to *res judicata* whereby the doctrine "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*; *cf.* RESTATEMENT (SECOND) OF JUDGMENTS §§ 24, 25 (1982). In determining whether a group of facts constitutes a transaction for purposes of *res judicata*, a court must consider "whether the facts are related in time, space, origin or motivation, and whether they form a convenient trial unit." *Adair*, 680 N.W.2d at 398.

To prevail on summary judgment, Stephens and MTG must show that there is no genuine issue of material fact as to whether the claims raised by Dietrich in federal court were, or could have been, resolved in the state court proceeding. *Adair*, 680 N.W.2d at 396. Dietrich's federal complaint, however, does not seek to relitigate claims that were available to the Trust in the state court action. The complaint alleges that "[d]efendant paid accrued interest through December 2004 upon which the [state] Court dismissed the case" and that "defendants refused to make payments since January 2005 despite repeated requests." It is these post-settlement obligations that Dietrich now seeks to redress in federal court. Quite naturally, the facts giving rise to Dietrich's federal claims—MTG's post-settlement breaches—were not yet in existence at the time that the state court

action settled. Consequently, Dietrich's federal claims are not the same, and do not arise from the same transaction, as the Trust's state court claims.

Our conclusion here finds additional support in the Restatement of Judgments, which explains:

> When there is an undertaking, for which the whole consideration has been previously given, to make a series of payments of money—perhaps represented by a series of promissory notes, whether or not negotiable—the obligation to make each payment is considered separate from the others and judgment can be obtained on any one or a number of them without affecting the right to maintain an action on the others.

RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. d (1982); *see, e.g.*, *Said v. Rouge Steel Co.*, 530 N.W.2d 765, 770 (Mich. Ct. App.1995) (recognizing, in the context of maintenance and cure, that when a "continuing" duty is violated, "the doctrines of res judicata and collateral estoppel do not bar serial suits"). Dietrich's federal complaint alleges breach of separate payment obligations beginning in January 2005. The state court action, however, involved redress for defaulted payments that occurred up until the time of settlement in November 2004. MTG and Stephens do not contradict this determination. They merely assert that "[b]oth cases deal with the Promissory Note and the Property." That both cases arise under the same promissory note is not enough for purposes of *res judicata* where, as here, the note features an undertaking to make a series of separate payments. Accordingly, Dietrich's complaint establishes a genuine issue of material fact as to whether her instant federal court claims are not the same, and do not arise from the same transaction, as the Trust's state court claims. Summary judgment on the basis of *res judicata* was thus improper.

MTG and Stephens suggest in their brief that Dietrich must seek to enforce the state court settlement agreement instead of bringing her claims directly under the note. This argument is not germane to the *res judicata* inquiry, but we briefly address it here. It is true that, in lieu of bringing an action in federal court to enforce MTG's continuing obligations under the note, Dietrich might have filed suit in state court to enforce the settlement agreement. However, the existence of the settlement agreement, and the ability to enforce the note through the settlement agreement, do not preclude Dietrich from asserting claims directly under the note itself. The settlement agreement did not discharge MTG's obligations under the promissory note, nor can it be read to preclude Dietrich from continuing to take direct action under the note. Counsel for MTG and Stephens conceded as much when he admitted MTG's liability under the settlement agreement *and* the note during the summary judgment motion hearing.

Both parties also briefed arguments related to discovery sanctions leveled against MTG and Stephens, and a motion to amend filed by Dietrich. The district court did not reach these matters as a result of its *res judicata* determination, and we decline to address them here. We therefore remand these matters to the district court for further proceedings.

## III.

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for further proceedings.